IN THE UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex. rel<br>STEVE F. MONTOYA, JR., M.D., | §<br>§<br>§  FILED UNDER SEAL<br>§ |
| V. | §  CIVIL ACTION NO. |
| United Health Group, United Healthcare,<br>Staff Care and Optum | §<br>§  6:22-cv-052-H<br>§<br>§ |

## COMPLAINT

Plaintiffs, United States of America ex. rel Steve F. Montoya, M.D., through their attorneys complain and allege the following:

### Summary Statement

1. This action is brought by Relator Steve F. Montoya, Jr., M.D., on behalf of the United States of America to recover all damages, penalties and other remedies pursuant to 31 U.S.C. § 3729-3733 for knowingly filing false claims submitted by Defendant to the United States of America through their Medicare programs.

2. Defendants have engaged in a systematic and willful practice of 1) ordering test including Urinalysis and/or stool testing for occult blood and /or hemoglobin A-1C and/or hepatitis C screening without a physician order and/or necessity and/or a physician patient visit without a necessity ; 2) "up-coding" Medicare and Medicaid claims it submits by coding and billing for services , test including Urinalysis and/or stool testing for occult blood and /or hemoglobin A-1C and/or hepatitis C screening without a physician order and/or necessity and/or a physician patient visit without a necessity , at a level without justification by the documented services provided; 3)

failing and refusing to refund payments when the defendants have full knowledge that the claims it summited to the government for the services described were paid fraudulently; 4) billing for services to patients on an up-coding basis when defendants knew that non-related entities or medical practices owned and/or contracted physicians would bill/code at a lower rate and not bill for services not needed; 5) not having independent physicians providing the care and call schedule to the Medicare patients ; 6) submitting claims for medical services for services not needed or evaluated as necessary by the treating physician; 7) billing for services not ordered by the treating physician and just automatically for all patients prior ordered before any examination by the examining/ treating physician; 8) prohibiting the examining/ treating physician from changing the ordering of unnecessary medical tests/ procedures to remedy the problem; 9) otherwise falsifying its claim billed and coding guidelines in violation of federal laws and regulations; 10) unlawfully retaliating against treating physicians for reporting the fraudulent and unnecessary testing and procedures on patients. ;

3. Relators claim a share of the recovery for attorney's fees and costs, and for damages for retaliation against Relators due to Relators protected conduct of challenging and reporting the Medicare and Medicaid fraud.

4. Relators claim a share of the recovery for such false claims and violation of federal laws as qui tam. Plaintiff Relators, for attorney's fees and costs for damages for retaliation against Relators due to challenging the illegal actions of Defendant and filing this case.

Parties

5. Relator Steve F. Montoya, Jr., MD is a citizen of the United States of America and a resident of the State of Texas residing in Tom Green County, Texas.

6. At all material times the Relator is a medical doctor licensed to practice medicine in the State of Texas. The Relator is or has been the treating physician/ doctor of patients at all relevant times. The Relator practices in the fields of nephrology and internal medicine.

7. Relators bring this action on behalf of the United States of America pursuant to 31 U.S.C. § 3730(b)(1). The USA is the federal government that through the Department of Health and Human Services (HHS) pays claims submitted to it by Defendants through Medicare programs.

8. Defendant Optum is a wholly owned subsidiary of United Health Group, United Healthcare. Defendant Optum is a Delaware LLC that is registered to do business in the State of Texas and has its principal place of business in _____. United Healthcare can be served by serving its registered agent _____ at its registered address, _____.

9. Defendant Staff Care is a Delaware LLC that is registered to do business in the State of Texas and has its principal place of business in _____. Staff Care can be served by serving its registered agent _____ at its registered address, _____.

10.

11.     Defendant United Healthcare is a Delaware LLC that is registered to do business in the State of Texas and has its principal place of business in _____. United Healthcare can be served by serving its registered agent _____ at its registered address, _____

12.     Staff Care is a multi-specialty physician service provider controlled by Optum, which is a provider controlled by United Healthcare to the insureds of United Healthcare that offers insurance to individuals on Medicare.

Jurisdiction and Venue

13.     Jurisdiction lies in this Court pursuant to 28 U.S.C. §§ 1331, 1345 and 31 U.S.C. 3732(a) and _____.

14.     Venue is proper in the Federal District Court, Northern District of Texas. San Angelo Division, inter alia, pursuant to 28 U.S.C. § 1391 because Defendants are subject to jurisdiction in the Northern District of Texas San Angelo Division. Steve F. Montoya, Jr., MD for the Defendants saw patients in the Northern District of Texas San Angelo Division.

15.     Before filing this Complaint, Relators informed the Center for Medicare and Medicaid Services and the United States Department of Justice, Office of the United States Attorney for the Northern District of Texas of the allegations being investigated by Relators and of Relators intent

to file this action. Relator has submitted a disclosure statement to the United States Attorney Northern District of Texas.

16. None of the allegations set forth in this Complaint is based on a public disclosure of allegations or transactions in a criminal, civil or administrative hearing in a congressional administrative or General Accounting office report, hearing, audit or investigation or from the news media.

17. The Relators have direct and independent knowledge of the information on which the allegations set forth in this Complaint are based. Relators have knowledge of the information on which their allegations are based that is independent from any public disclosure about the matter and that materially adds to any such public disclosures.

## Background
## Medicare Information

18.1 The Medicare program was created in 1965 as part of the Social Security Act, 42 U.S.C. §§ 1395 et seq., to provide a federally funded health insurance program for the aged and disabled. The Center for Medicare and Medicaid Service (CMS) a component of HHS, administers the Medicare program.

18.2 The Medicare program is comprised of four-parts designated as Medicare Parts A, B, C and D. Medicare Part A (42 U.S.C. §§ 1395-1395; -5) covers services furnished by hospitals and other providers. Medicare Part B (42 U.S.C. §§ 1395j-1395w4) offers coverage for medically necessary physician services, outpatient care, emergency medical care, and other services not covered by Part A.

18.3 Insurance companies and providers who participate in the Medicare program are reimbursed at a rate outlined in a provider's fee schedule in accordance with 42 U.S.C. § 1395w-4(a)(1)-(2); 42 C.F.R. § 414.4. Payment amounts under the fee schedule are calculated by multiplying (1) The service was actually provided (the service had to actually be provided and was medically necessary to the patient) and the relative value of the service; (2) the conversion factor for the year and (3) the geographic adjustment factor applicable to the locality in which the service was provided as set forth in 42 U.S.C. § 1395w-4(b)(1).

18.4 Defendant derives a substantial portion of its total revenue, upon information and belief, nearly 70% from payment for services by Medicare.

18.5 CMS is authorized by Congress as established in 42 U.S.C. § 1395w-4(c)(5) to establish a uniform code identifying medical services and testing services for use in completing Medicare and forms.

18.6 CMS utilizes a Healthcare Common Procedure Coding System (HCPCS) to effectuate a uniform code for identifying physicians' services. HCPCS is directed into two main subsystems, Level I and Level II. Level I is a comprised of a numeric coding system established by the American Medical Association and tilled Current Procedural Terminology (CPT) that is a common language for physician service coding and procedures of seeking government funds through reimbursement from Medicare and Medicaid. The Level II HCPCS, which is maintained and distributed by CMS in conjunction with private payer organizations as set forth in 42 C.F.R. §414.40(a), is a standardized coding billing system that is used to primarily identify products,

supplies and services not included in the CPT codes such as ambulance services and durable medical equipment.

18.7    HCPCS codes must be used by all health plans which include, inter alia, Parts A and B of the Medicare and Medicaid programs, as set forth in 45 C.F.R. §160.103.

18.8    Healthcare providers under Medicare Bart system submit claims for reimbursement on CMS 1500 electronic 4010A1 claim forms.

18.9    The claim forms include the appropriate codes, including CPT, HCPCS, HCPCS II, ICD-9-CM, as well as "modifiers" to describe the services rendered and billed.

18.10 In order to bill the government through the Medicare or Medicaid programs, a health care provider must sign the CMS 1500 form, attesting to the fact that they "certify that the statements on the reverse apply to the bill and are made a part thereof.

18.11 "In this case the physician did not order all the tests billed for by the Defendants. The medical tests were not determined to be medically necessary for each patient but ordered automatically by the Defendants and the Defendants acted as if the tests were approved by the treating physician.

18.12 Knowingly under section 3729(b) is defined as:

　　1) Has actual knowledge of the truth or falsity information;

　　2) Acts in deliberate ignorance of the truth or falsity of the information; or

　　3) Acts in reckless disregard of the truth or falsity of the information.

No proof of specific intent is required. 31 USCA § 3729(b)(1).

Attached as Exhibit 2 is the handbook that shows the examining physician had no authority but was required / ordered to administer the tests.

As the book says it is done to be paid a Bonus by CMS.

Only a physician can determine under the Law of the State of Texas the necessity of a test. In all matters the entity is making the decision to automatically order tests so it can receive the bonus payments.

This proves the actual knowledge requirement and thus a factual inquiry is met. In the alternative this is deliberate ignoring of or reckless disregard. The Defendants cannot take the ostrich like behavior or the refusal to learn that only the treating physician can order a test. Knowingly deliberate ignorance or extreme carelessness constitutes reckless disregard. The intentional act of ordering tests for all patients involves the clarity that the test was not needed by every patient and proves reckless disregard.

Submitting all the claims to the government and saying the government has no defense when only the physician can after examination determine the necessity of a test at every visit. In these cases it was ordered at every visit and not just once a year during a complete physical examination.

18.13 The statements on the reverse of every CMS 1500 claim form include the following language regarding providing knowingly false information: "Any person who knowingly files a statement of claim containing any misrepresentation or any false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties."

18.14 The statements on the reverse of every CMS 1500 claim form include the following language regarding certification of medical necessity: "I certify that the services shown on this form were medically indicated and necessary for the health of the patient and were personally furnished by me or were furnished incident to my professional service by my employee under my immediate personal supervision, except as otherwise expressly permitted by Medicare or CHAMPUS regulations."

18.15 CMS publishes a Medicare Claims Processing Manual that sets forth instructions on how CPT codes are billed. The CMS Manual System Publication 100-04 covers Medicare Claims Processing. The CMS Manual System Publication 100-02 covers Medicare Benefit Policy. The CMS Manual System Publication #45 is the State Medicaid Manual. Medicare Procedure for Evaluation and Management Services to Ensure Proper Levels of Service and Payment.

18.15 Defendants healthcare providers bill Medicare and/or Medicaid for the time that they spend with a patient for evaluation and management ("E/M") service during a home visit. These E/M services vary with respect to, among other factors, the time Defendant healthcare provider spends with the patient, as well as the complexity and severity of the health-related issued addressed by Defendant's healthcare providers.

E/M services comprise approximately forty (40) percent of the benefit dollars paid under Part B of the Medicare Program.

18.16 The Medicare Claims Processing Manual Pub. 100-04 Chapter 12, Section 30.6.7 governs

the payment for E/M visits by Medicare patients.

18.17 To bill Medicare and/or Medicaid for E/M services provided to an existing patient, Defendant's healthcare providers must truthfully describe the healthcare service provided based on CPT code levels of service for the urine dipstick test, which are codes 81001 through 81099.

18.18 To Bill Medicare and/or Medicaid for E/M services provided to a new patient, Defendants healthcare providers must truthfully describe the healthcare service provided based on CPT codes 99221-99223.

18.19 Medical documentation of the services provided to the patient must justify the level of Evaluation and Management service to justify billing the corresponding CPT code to submit claims to the government.

18.20 Billing of an E/M service and related CPT code must be based on medical records verifying the patient history, examination, and medical decision making which was actually involved.

18.21 In order to code a Level 5, CPT code 99215, for E/M service to an existing patient, the medical documentation must verify at least two of the three key components: 1) comprehensive history; 2) comprehensive examination; and 3) highly complex medical decision making.

18.22 In order to code a Level 5, CPT code 99205, E/M service for a new patient, the medical documentation must verify an outpatient visit which included 1) a comprehensive history, 2) a comprehensive examination; and 3) highly complex medical decision-making.

In order to code a Level 3, which is CPT code 81001-81099, E/M service for a patient to

receive testing of Urinalysis.

Defendant's Policy Prohibits Documentation Review by the examining Physicians to Ensure Proper Levels of Service & Allows Healthcare Providers to Code with Little or No Oversight

18.23  At Defendant, after a healthcare provider performs a service for a Medicare or Medicaid eligible patient, the healthcare provider documents and/or signs off on the health record of the patient and completes an "encounter form" which contains patient information, billing information, and name of healthcare provider.

18.25  On information and belief, the Defendant healthcare provider physicians are paid, in part, based upon revenue generated.

18.26  The Defendants coding team retrieves an electronically scanned version of the encounter form.

18.27  The Defendants billing system is designed to submit electronic versions of Medicare claim forms directly to the government for Medicare payment.

18.28  Defendant instructs its coding team not to verify whether the medical documentation supports the level of service reported on the encounter form. If the code formatting on the encounter form is correct on its face, the form is sent to the data entry team which enters the information into the Defendants billing system to generate a claim form.

18.29  Defendants billing and coding policies ensure that providers claims are submitted for reimbursement without review of medical documentation unless there are obvious errors on the face of the form that cannot be corrected without such review, such as if the form has not been completed.

18.30 Defendants' policy of in this case the physician did not order all the tests billed for by the Defendants. The medical tests were not determined to be medically necessary for each patient but ordered automatically by the Defendants and the Defendants acted as if the tests were approved by the treating physician.

Despite the objections of the Relator the Defendants continued their policy of ordering and billing for medically unnecessary tests. This policy of allowing the Defendants to control the ordering of the tests and not the examining physician and causing higher billing level codes than could be supported by the medical documentation. Thus proves use of ordering medically unnecessary tests and billing using willful and continued repetition of the false use of high levels of billing codes and billing for medically unnecessary medical tests and Defendant's refusal to correct and stop the false billings.

Defendants' policy of not using the physician to ensure a practice of not up-coding and not billing for medically unnecessary testing by not requiring proof that the levels of services being billed are supported by proper medical documentation and necessity but ordered by the Defendants even before a medical examination.

19.1   Medicare rules and regulations prohibit submitting claims for payment of medically unnecessary services. Social Security Act § 1862(a)(1)(a) requires that, "All billed services must be based only on activities that are reasonable and necessary for the diagnosis or treatment of illness or injury."

19.2   Seeking payment for medically unnecessary services is an act designed to obtain reimbursement for a service that is not warranted by the patient's current and documented medical condition.   42 U.S.C. § 1395y(a)(1)(A) requires that "no payment may be made under part A or

part B for any expenses incurred for items or services which are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of the malformed body member".

19.3 42 C.F.R. § 411.15(k)(1) states "[t]he following services are excluded from coverage: [a]ny services that are not reasonable and necessary for one of the following purposes for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member."

19.4 42 C.F.R. § 410.32 states in part, diagnostic x-ray tests, diagnostic laboratory tests, and other diagnostic tests must be ordered by the physician who is treating the beneficiary, that is, the physician who furnishes a consultation or treats a beneficiary for a specific medical problem and who uses the results in the management of the beneficiary's specific medical problem. Tests not ordered by the physician who is treating the beneficiary are not reasonable and necessary. 42 C.F.R. § 411.15(k)(1).

The Defendant has taken no action to implement any program of review of the alleged upcoding and ordering of medical tests before any determination of medical necessity.

Failure to have treating physician determine the necessity of medical testing instead of the billing and insurance company.

When you are the named physician to examine the patient you received from the defendants the information on where to examine the patient. And that the patient had to have the minimum following medical tests: Urinalysis and/or stool testing for occult blood and /or hemoglobin A-1C and/or hepatitis C screening. These patients were usually examined in their home. Dr. Montoya's practice as a fellowship trained nephrologist was to determine if a patient needed ha a medical necessity for a Urinalysis and/or stool testing for occult blood and /or

hemoglobin A-1C and/or hepatitis C screening. Instead of relying on the medical training and experience of Dr. Montoya and other examining physicians but instead were ordered to do the medical testing without proof of medical necessity and done to make money.

20. Patients are damaged by the actions of the Defendants by higher costs of care.

Patients have an absolute right under the patients' Bill of Rights attached as Exhibit A to "Participate in decisions about your care, including developing your treatment plan, discharge planning and having your family and personal physician promptly notified of your admission. Select providers of goods and services to be received after discharge." The Plaintiffs did not follow the Bill of Rights and violated the patient choice and damaged the Defendants in violating the Bill of Rights.

19.1 The actions of the Defendants are illegal and anticompetitive.

19.2 United Health Group, United Healthcare created its affiliated group of doctors affiliated with Optum, which is a wholly owned subsidiary of United Health Group, United Healthcare Associates. These groups allow the illegal upcoding and ordering of the medical tests without medical necessity or orders of the examining physician.

19.3 While the conspirators' concerted refusal to not order only medically necessary tests, it has also harmed consumers and others who pay for services and Medicare supplemental policies in the relevant market by increasing the costs of those services and have Medicare. This arrangement avoided the

patient-physician relationship and the ability of the patient to question the medical necessity of tests.

Even if the hospitalists could do the same work as Dr. Montoya or his partner used to provide, the patient (and/or insurance and taxpayer-funded Medicare/Medicaid) still faces increased cost for charging for tests that are not medically necessary and not ordered by the physician. This is a classic example of a fraudulent injury, *i.e.*, an injury to the Medicare system by ordering tests and being paid for the tests when not medically necessary. This injury arises from the conspirators' group automatically ordering tests of individuals on Medicare and being paid when not allowing a treating physician to even examine the patient to make a medical examine to determine the health of a patient and thus medical necessity for a test.

22.2   In this case the actions of the Defendants in not following the requirements of the federal government violated the restraint of trade and false billing with existing and potential patient relationships to the detriment of the Plaintiffs causing the Plaintiffs damage.

23.1   <u>FIRST CAUSE OF ACTION</u>
<u>Defendant Violated the False Claims Act - 31 U.S.C. § 3729(a)(1)(A) by Fraudulently Presenting False Claims for Remuneration from Medicare Including: Up-coding Levels of Service for E/M Services; Fraudulently Billing Medically Unnecessary Procedures; Fraudulently Billing for Services Never Performed; and Otherwise Failing to Follow Established Billing and Coding Guidelines in Violation of State and Federal Laws and Regulations</u>

23.2   Relator reasserts and incorporates by reference the allegations of all previous paragraphs as if restated herein.

23.3   By its action and inaction described above, Defendant knowingly presented or caused to be presented to the United States false or fraudulent Medicare and/or Medicaid claims for payment or approval, in violation of the False Claims Act, as amended, 31 U.S.C. § 3729(a) (I)(A); that is, Defendant knowingly made or presented, or caused to be made or presented, to the United States claims for payment for services which were false, in that the services claimed were not medically necessary or otherwise did not qualify for reimbursement under the Medicare or Medicaid programs.

23.4 The United States has been damaged by all of the aforementioned illegal actions an as of yet undetermined amount. With respect to the aforementioned failures to disclose and illegal activities, Defendant knowingly made false claims to officials of the United States for the purpose of obtaining compensation to which it was not otherwise entitled.

24.1 <u>SECOND CAUSE OF ACTION</u>
<u>Defendant Violated the False Claims Act - 31 U.S.C. § 3729 (a)(1)(B) by Submitting False Claim Forms for Remuneration from Medicare and Medicaid including: Forms that Billed Higher Levels of E/M Services than Those Provided; Fraudulently Billing Medically Unnecessary procedures; and Otherwise Failing to Follow Established Billing and Coding Guidelines in Violation of State and Federal Laws and Regulations.</u>

24.2 Relator reasserts and incorporates by reference all paragraphs set forth above as if restated herein.

24.3 By its actions and inactions described above, Defendant knowingly made or used a false record or statement to get a false or fraudulent Medicare and Medicaid claim paid or approved by the United States, in violation of the False Claims Act, as amended, 31 U.S.C. § 3729(a)(1)(B); that is, Defendant knowingly made or used or caused to be made or used false Medicare and Medicaid claim forms and supporting materials, such as internal billing forms, and false certifications of the truthfulness and accuracy of claims submitted, to get false or fraudulent Medicare and Medicaid claims paid or approved by the United States, in that the services claimed for were not medically necessary or otherwise did not qualify for reimbursement under the Medicare or Medicaid programs.

24.4 The United States of America has been damaged by all of the aforementioned illegal actions in an as of yet undetermined amount. With respect to the aforementioned failures to disclose and illegal activities, Defendant knowingly made false claims to officials of the United States for the purpose of obtaining compensation to which it was not otherwise entitled.

25.1  THIRD CAUSE OF ACTION
Defendant Violated the False Claims Act - 31 U.S.C. § 3729 (a)(1)(C) by Putting in Place Policies that Allow Healthcare Providers to Fraudulently Bill Higher Level of E/M Services than Were Provided. Policies that Prevented Reviewing the Levels of Service for Accuracy and Policies that Insured that Fraudulently Obtained Medicare Reimbursements would not be Corrected Retroactively.

25.1  Relator reasserts and incorporates by reference all paragraphs set forth above as if restated herein.

25.2  By its actions and inactions described above, Defendant knowingly conspired with its healthcare providers to submit false or fraudulent statement of levels of E/M services in order to allow Defendant to submit claims for payment to the United States, in violation of the False Claims Act, as amended, 31 U.S.C. § 3729(0(1)(A) and (B).

25.3  By its actions and inactions described above, Defendants conspired to retain fraudulent Medicare reimbursements, which are legally required to be repaid to the United States, by instituting a policy that only corrects claims submitted from the date the illegal billing practice is uncovered by Relator, in violation of the False Claims Act, as amended, 31 U.S.C. § 3729(0(1)(C).

25.4  The United States of America has been damaged by all of the aforementioned illegal actions in an as of yet undetermined amount. With respect to the aforementioned failures to disclose and illegal activities, Defendant knowingly made false claims to officials of the United States for the purpose of obtaining compensation to which it was not otherwise entitled.

26.1  FOURTH CAUSE OF ACTION
Defendant Violated False Claims Act – 31 U.S.C. 3729(a)(1)(G) by Creating Policies that Ensure that Medicare is Not Refunded Money for Knowingly Fraudulent Claims

26.2    Relator reasserts and incorporates by reference all paragraphs set forth above as if restated herein.

26.3    By its actions and inactions described above, Defendant has received funds from the United States for knowingly false claims and has failed to return those funds, despite a legal obligation to repay said funds, in violation of the False Claims Act, as amended, 31 U.S.C. § 3729(a) (1)(G).

26.4    The United States of America has been damaged by all of the aforementioned illegal actions in an as of yet undetermined amount. With respect to the aforementioned failures to disclose and illegal activities, Defendant knowingly made false claims to officials of the United States for purpose of retaining compensation to which it was not otherwise entitled.

27.1    FIFTH CAUSE OF ACTION
Unlawful Retaliation and Conduct under Federal 31 U.S.C. § 3730(h): Unlawful Retaliation Against Relator

27.2    Relator reasserts and incorporates by reference all paragraphs set forth above as if restated herein.

27.3.   31 U.S.C. § 3730(h), provides, "(1) Any employee . . . shall be entitled to all relief necessary to make that employee, whole, if that employee discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by employee in furtherance of, other efforts to stop one or more violations of this subchapters."

27.4.   Relators have been damaged by the Defendants actions within the jurisdiction amount of this Court.

## PRAYER FOR RELIEF

WHEREFORE, the United States is entitled to damages from Defendant in accordance with the provisions of 31 U.S.C. §§ 3729-3733 and Plaintiff/Relator requests that judgment be entered against Defendant, ordering that:

a. Defendants cease and desist from violating the False Claims Act, 31 U.S.C. § 3729 *et seq.*

b. Defendants cease and desist from ordering medical tests before and/or without a finding by the examining physical examination by the physician of a medical necessity for the test;

c. Defendants pay an amount equal to three times the amount of damages the United States has sustained because of Defendant's actions, plus a civil penalty against Defendant of not less than $ 5,000.00 and not more than $ 11,000.00 for each violation of 31 U.S.C. § 3729;

d. Plaintiff/Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d) as their Relator Share;

e. Plaintiff/Relator be awarded all costs of this action, including attorney's fees, expenses and costs pursuant to 31 U.S.C. § 3730(d);

f. Plaintiff/Relator be awarded such relief as is appropriate under the provisions of 31 U.S.C. § 3730(h) of the False Claims Act.

g. Plaintiff/Relator be awarded such relief as is appropriate under the provisions of 42 U.S.C. § 1395dd (1) and 42 U.S.C. § 1370(a) – 7(a);

h. The United States and Plaintiff/Relator be granted all such other relief as the Court deems just and proper.

  i. Plaintiff/Relator be awarded relief pursuant for retaliatory actions against Relator including back fees, potential fees, reinstatement, attorneys' fees and compensatory and punitive damages.

PLEASE TAKE NOTICE THAT THE PLAINTIFF DEMANDS THE ABOVE-ENTITLED ACTION TO BE TRIED TO A 12 PERSON JURY. RELATORS HAVE PAID THE JURY FEE.

             Respectfully Submitted
             Paul Craig Laird Law Firm, PLLC
             /s/ Craig Laird
             By: Craig Laird
             2629 East Grauwyler Road
             Irving, TX 75061
             972-554-0929
             214-260-4935- fax
             PCL@LAIRD.LAWYER
             SBOT 11795420
             Attorney for Plaintiff